**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LARRY KIRBY,**

      **Plaintiff,**

-vs-                                       **Case No. 6:10-cv-1228-Orl-28DAB**

**SIEMENS CORPORATION GROUP LIFE, MEDICAL, DENTAL, VISION, HEARING, AND LONG TERM DISABILITY INCOME PLAN; PORTABLE TERM LIFE INSURANCE BENEFIT PLAN; and METROPOLITAN LIFE INSURANCE COMPANY;**

      **Defendants.**

## ORDER

Larry Kirby brings the instant action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The case presents issues regarding Kirby's entitlement to long-term disability ("LTD") benefits and to paralysis benefits under a life insurance plan.[1] The case is currently before the Court on cross-motions for summary judgment (Docs. 30 & 31).[2] Having considered the parties' filings, the Court concludes that

---

[1] Initially, Kirby also sought to recover short-term disability benefits, but he has voluntarily dismissed his claim for those benefits. (See Docs. 46 & 47).

[2] The pertinent filings are: Kirby's Rule 56 Dispositive Motion for Summary Judgment (Doc. 30); Defendants' Response to Kirby's Motion for Summary Judgment (Doc. 34); Kirby's Reply (Doc. 38); Defendants' Motion for Summary Judgment (Doc. 31); Kirby's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 33); and Defendants' Reply (Doc. 39).

both motions must be granted in part and denied in part.

## I. Background

Many of the facts are undisputed. Kirby was employed by Siemens Information and Communication Networks ("SICN"), a subsidiary of Siemens Corporation, from January 29, 1981, until his termination on March 5, 2002. While he was an employee of SICN, Kirby was a participant in the Siemens Corporation Group Life, Medical, Dental, Vision, Hearing, and Long Term Disability Income Plan ("the Siemens Corporation Group Plan"), the Siemens Information and Communication Networks, Inc. Short Term Disability Benefit Plan ("the SICN STD Plan"), and the Portable Term Life Insurance Benefit Plan ("the Portable Life Plan").

Siemens Corporation—the parent of SICN—is the Plan Administrator and Plan Sponsor for the Siemens Corporation Group Plan. (See Summary Plan Description, Doc. 1-1, at 111; see also Doc. 31 at 3). Defendant Metropolitan Life Insurance Company ("MetLife") is the Claims Administrator and the Insurer for LTD benefits under the Siemens Corporation Group Plan and is also the Claims Administrator for portable life benefits under the Portable Life Plan. (See Summary Plan Description at 113; see also Doc. 17 at 2). MetLife is also the Claims Administrator for STD benefits, but it has been in that role only since 2006 and was not the Claims Administrator for STD benefits during 2002 or 2003. (See Doc. 17 at 2).

In June 2003, Kirby filed a lawsuit (Case No. 6:03-cv-986-Orl-28DAB in this court) against SICN alleging that SICN terminated his employment because of his age. That case settled before trial, and in December 2003 Kirby signed a Settlement Agreement and Full

and Final Release ("the Agreement"), (LTD A.R. 0531-0535),[3] in connection with that lawsuit.

In February 2008, Kirby submitted a claim to MetLife, as the administrator of the Siemens Corporation LTD Group Plan, for LTD benefits.  Initially, MetLife denied the LTD claim on April 29, 2008, as untimely, (LTD A.R. 0192-0193), but MetLife changed its decision on August 28, 2008, and approved Kirby's claim for LTD benefits based on "special circumstances," (LTD A.R. 0316, 0528).  MetLife then sent Kirby payments of $109,904.33 and $436,385.17 for retroactive LTD benefits covering the period September 1, 2002, through January 31, 2009.  A monthly benefit of $6,607.95 was then instated, and payments in that amount were made to Kirby for February and March 2009.

After his claim for LTD benefits was approved, Kirby sought an award of STD benefits for the six-month period from March 5, 2002, to the LTD effective date of September 1, 2002.  In March or April 2009, in the course of processing Kirby's STD claim, MetLife became aware of and obtained a copy of the Agreement that Kirby had signed in resolution of his 2003 age discrimination lawsuit.  MetLife, reading that document as a release of all of Kirby's claims—including claims for STD and LTD benefits—then terminated Kirby's LTD benefits

---

[3]Citations to the LTD Administrative Record are denoted by "LTD A.R." followed by the page number.  The LTD Administrative Record—along with the STD Administrative Record and the Portable Life Plan Administrative Record—is attached to the Agreed Notice of Filing Administrative Records and Claim File Documents (Doc. 29).  As noted by Defendants, (see Doc. 34 at 3 n.4), in this ERISA appeal, the Court may properly consider only documents that are in the administrative record and that thus were before the decisionmaker below.  See, e.g., Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011) ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision.").

and denied his claim for STD benefits,[4] notifying him of these decisions in a letter dated April 8, 2009. (LTD A.R. 0528-0530). In that letter, MetLife also requested that Kirby promptly return the LTD benefits totaling $559,505.40 that he had already been paid. (See id.).

Through counsel, Kirby administratively appealed MetLife's termination of LTD benefits and denial of STD benefits. (LTD A.R. 0548-0549, 0554-0561). On February 26, 2010, MetLife affirmed both decisions, again relying on the Agreement. (LTD A.R. 0575-0581). Kirby filed this lawsuit in August 2010 seeking to recover LTD benefits from April 2, 2009, onward. (Compl., Doc. 1, Count I). In his initial Complaint, Kirby also sought to recover STD benefits for the period from March 5, 2002, to September 1, 2002, (id.), but he has voluntarily dismissed the portion of Count I that pertains to STD benefits.[5]

Additionally, Kirby seeks insurance benefits under the Life Plan, asserting that in February 2009 he made a claim for $189,000 in benefits under the Life Plan for paralysis of both of his legs. (Compl. Count II). Kirby also brings a breach of fiduciary duty claim against MetLife for failing to process or pay his claim for Life Plan benefits, asserting that MetLife has

---

[4]In denying Kirby's claim for STD benefits, MetLife noted that it had only begun to administer STD claims in 2006 and that it was unclear whether Kirby actually had STD coverage. (LTD A.R. 0529). However, MetLife deemed this issue moot in light of the Agreement. (Id.).

[5]As noted in prior filings in this case, when Kirby filed this suit he mistakenly believed that the STD Plan was part of the Siemens Corporation Group Plan, and therefore he did not initially name the STD Plan as a party. (See, e.g., Doc. 41 at 2). Kirby was given an opportunity to add the STD Plan as a party, (see id. at 3), and Kirby did so in the Amended Complaint (Doc. 44). However, Kirby then discovered that the STD Plan is defunct and has no successor "against which Kirby's claim for STD benefits may be made or maintained in good faith." (Doc. 46 at 2). Kirby accordingly dismissed his claim for STD benefits voluntarily. (See id.).

refused to process that claim or to notify him of any determination.  (Compl. Count III).

Along with its Answer, MetLife filed a three-count Counterclaim alleging unjust enrichment (Count I), an equitable claim in which MetLife seeks return of the $559,505.40 in LTD benefits that it paid to Kirby (Count II), and breach of fiduciary duty (Count III). (Answer & Countercl., Doc. 17).  MetLife has since withdrawn its breach of fiduciary duty claim.  (See Docs. 32 & 40).  The parties' cross-motions for summary judgment as to all pending claims are now before the Court.[6]

## II.  Discussion

### A.  LTD Benefits

It is undisputed that after initially denying as untimely Kirby's claim for LTD benefits, MetLife later granted his claim based on "special circumstances" but then, after making two sizeable payments for retroactive benefits as well as two monthly payments, terminated Kirby's LTD benefits based on the Agreement.  (See Apr. 8, 2009 Letter from MetLife to Kirby, LTD A.R. 0528-0530).  Thus, the issue before this Court is whether MetLife correctly determined that the Agreement bars Kirby's claim for LTD benefits.  That determination is reviewed de novo and requires analysis of the provisions of the Agreement, the construction and enforcement of which are, as noted by the parties, "governed by principles of Florida's

---

[6]The Court's rulings on these motions have been delayed in part by an issue over whether the STD Plan needed to be named as a party.  Earlier in these proceedings, the parties agreed to defer that issue until after a ruling on the summary judgment motions, (see Doc. 36), and the Court initially acquiesced in that agreement, (see Doc. 40).  However, in the course of working on the motions, the Court determined that the motions could not properly be ruled on until after the matter of naming the STD Plan was straightened out. (See Doc. 41).  Kirby then added the STD Plan as a party, only, as noted earlier, to later voluntarily dismiss his claim regarding STD benefits.  (See Docs. 44, 46, & 47).

general contract law." Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987); see also Biggin v. RLI Ins. Co., No. 6:06-cv-104-Orl-19KRS, 2006 WL 1232620, at *4 (M.D. Fla. May 5, 2006) ("A litigation release of claims is a contract, and therefore it is construed according to the normal rules of contract interpretation.").

"When the language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." Talbott v. First Bank Fla., FSB, 59 So. 3d 243, 245 (Fla. 4th DCA 2011). "Words in a contract are to be given their plain and ordinary meaning, and it is not for the court to add or subtract any language from the face of a clearly worded agreement." Schwartz, 807 F.2d at 905. Furthermore, "any ambiguity in a written contract will be construed against the party who drew the provision." Tampa Fed. Sav. & Loan Ass'n v. Aeon, Inc., 403 So. 2d 1002, 1004 (Fla. 2d DCA 1981).

Defendants argue that the Agreement precludes Kirby's claim for LTD benefits and that therefore the administrative decision to terminate benefits upon discovery of the Agreement was correct. Kirby, of course, urges that the Agreement does not have this effect. In their summary judgment filings, the parties cite cases from throughout the country involving releases followed by assertions of claims for ERISA benefits. These cases have involved varying fact patterns and releases containing different terms, and courts have reached different conclusions.

Defendants rely on three cases—Bennett v. CNA Ins. Cos., No. C-99-03127 EDL, 2001 WL 30533 (N.D. Cal. Jan. 5, 2001), Piehl v. Metro. Life Ins. Co., No. Civ. 03-669-MO, 2005 WL 627586 (D. Or. Mar. 16, 2005), and Parisi v. Kaiser Found. Health Plan Long Term

Disability Plan, No. C 06-04359 JSW, 2008 WL 220101 (N.D. Cal. Jan. 25, 2008).  In Bennett, after filing a sexual harassment claim, the plaintiff entered into a settlement agreement and release with her former employer and related business entities.  When she later sued the LTD plan and the insurer seeking unpaid disability benefits, the court determined that the release barred her claim for benefits even though neither the plan nor the insurer was specifically named as a releasee.  In reaching this conclusion, the court noted that the plan was administered by a party that *was* specifically released, and the plan also was found to be an "agent" and "entity" of that party; thus, the court found that the plan was released by the settlement agreement and the benefits claim was barred.  And, in Piehl, the court, relying on Bennett, found that a release that named only the employer as a released party nevertheless barred plaintiff's later claim against the claims administrator and the LTD plan.  2005 WL 627586 at *2-3.

Finally, in Parisi, the plaintiff had executed a release with his employer as part of a severance package, and when the plaintiff's later request for LTD benefits was denied, he sued the plan to recover benefits.  The release specifically provided that the plaintiff "releases and forever discharges" his employer and "any affiliated or related companies or divisions . . . from any and all claims of any and every kind," including claims under ERISA.  2008 WL 220101 at *1.  The employer was the plan administrator and the sponsor of the plan.  Citing Bennett and Piehl, the court concluded that "Plaintiff released Defendant by executing the agreement and is therefore barred from bringing this action."  Id. at *3.

In contrast to these cases, courts reached the opposite conclusion in the three cases that Kirby heavily relies upon—Antoniou v. Thiokol Corp. Grp. Long Term Disability Plan

(Plan No. 503), 849 F. Supp. 1531 (M.D. Fla. 1994) (Kovachevich, J.), Groska v. N. States Power Co. Pension Plan, Civ. No. 05-114 (JNE/FLN), 2007 WL 2791119 (D. Minn. Sept. 24, 2007), and Rombeiro v. Unum Life Ins. Co. of Am., 761 F. Supp. 2d 862 (N.D. Cal. 2010). In Antoniou, the plaintiff, a cook on a ship, was injured on the job and in April 1991 settled a Jones Act case against his employer and executed a release. At the time the release was executed, the plaintiff was receiving LTD benefits from the defendant plan and had been since 1988. In early 1992, the plan informed him that his benefits were being terminated based on the release. The plaintiff then filed suit against the plan.

The Antoniou court granted the plaintiff's motion for summary judgment, finding that only the employer—not the plan—was released in the release, which did "not in any way reference the Defendant disability plan." 849 F. Supp. at 1534. The court rejected the plan's argument that because the employer was the plan's "sponsor, administrator, and ultimate 'decision making entity' the [p]lan and [the employer were] essentially one in the same for the purposes of the release." Id. The court noted that ERISA "recognizes the separate existence of employee benefit plans." Id. (citing 29 U.S.C. § 1132(d)(1), which provides in part that "[a]n employee benefit plan my sue or be sued under this subchapter as an entity"). The court concluded that "because [the employer] and the [p]lan are properly recognized as separate legal entities and the release agreement by its express and unambiguous terms does not release the Defendant Plan, . . . as a matter of law . . . the Plan was not released by the agreement signed by the Antonious on April 8, 1991." Id.; accord Hubbert v. Prudential Ins. Co. of Am., No. 96-1093, 1997 WL 8854, at *3 (10th Cir. Jan. 10, 1997) ("Digital, as plaintiff's former employer, and the Digital [LTD Benefit] Plan[] are two separate

-8-

entities, and a release of one does not operate to release the other." (citing Antoniou)).

In Groska, the court similarly concluded that the plaintiff's claims against an employee benefit plan were not barred by a release she had signed in conjunction with accepting a severance package. The Groska court noted that the release discharged the employer "and any affiliated and subsidiary companies, corporations, partnerships or other business enterprises" but did not name the plan as a releasee. 2007 WL 2791119 at *8. Additionally, the court rejected as without legal support the plan's argument that it was an "affiliated" and "subsidiary" entity of the employer. Id. n.2. And, in Rombeiro, the court found that the terms of the release were unclear where the release did not mention the disability plan or ERISA by name, and the plan's motion for summary judgment was accordingly denied. 761 F. Supp. 2d at 869-71.

Having considered the parties' arguments, case law, and the Agreement at issue in this case, the Court concludes that the only party released in the Agreement was SICN and that the only claims released in the Agreement were claims against SICN. Kirby's LTD benefit claim is not against SICN, and accordingly it is not barred by the Agreement.

The two unnumbered introductory paragraphs of the Agreement provide:

> This Agreement is made among Larry Kirby ("Kirby") and Siemens Information and Communication Networks, Inc. ("SICN") including any of its parents, subsidiaries, partnerships, partners, affiliated and related entities, insurers, and its past, present, or future directors, administrators, officers, employees, agents, attorneys, representatives and assigns (referred to collectively as "Defendants").
>
> REASONS FOR AGREEMENT
>
> Kirby and Defendants ("the Parties") are parties in a civil lawsuit, Case No. 6:03-cv-986-Orl-28 DAB, . . . in which Kirby has asserted certain claims

> against Defendants, and Defendants have denied any wrongdoing with respect to Kirby. The Parties want to resolve and settle the claims made in the civil lawsuit, as well as any other claims the Parties may have against each other arising out of facts or events, known or unknown, occurring up to and including the date of execution of this Settlement Agreement and Full and Final Release ("Agreement").

(Agreement at 1). The Agreement then provides that "SICN will pay Kirby Fifty Thousand Dollars ($50,000) in settlement of this case" in three payments and that "[t]hese payments represent a full and final settlement of all claims or disputes that now exist between Defendants and Kirby, including but not limited to the claims arising out of the above-referenced lawsuit." (Id. ¶ 1).

The Agreement states that SICN would pay the mediators' fee and that "Kirby understands and agrees that Defendants shall neither make nor cause to be made any other payments to him, his beneficiaries or dependents, or his attorneys, or otherwise on his behalf, except as specifically referenced herein." (Id. ¶¶ 2 & 3). The fourth numbered paragraph of the Agreement, titled "General Release," then provides:

> Kirby agrees for himself and his successors in interest to release SICN from all claims of every kind (including without limitation attorneys' fees and costs) which Kirby has ever had or now may have against SICN. These claims include, but are not limited to, all claims arising out of Kirby's employment with SICN or the termination of his employment, all claims for breach of express or implied contract or covenant of good faith and fair dealing, all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Fair Labor Standards Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Employment Retirement Income Security Act, the Florida Civil Rights Act or other federal, state or local laws relating to employment or benefits associated with employment, claims for emotional distress, mental anguish, disability, personal injury, any and all claims that may be asserted on Kirby's behalf by others, as well as any and all claims that were asserted or that could have been asserted by Kirby in the lawsuit, excepting only his vested benefits under profit sharing and pension plans of Siemens Corporation.

>   Kirby further agrees that if he attempts to avoid or set aside the terms of this general release, or if SICN successfully asserts this general release as a defense or bar to any claim asserted by Kirby, he shall be liable for the costs and attorneys['] fees of SICN in defending such claims or asserting such defense based on this general release.

(Id. ¶ 4).

Kirby also agreed to withdraw or dismiss any civil claims he had filed, including but not limited to the age discrimination lawsuit, (id. ¶ 6), and warranted that he would "not file any civil complaints, charges, or lawsuits with any governmental agency or any court, against Defendants arising out of facts, claims or issues encompassed in this Agreement," (id. ¶ 7). Further, he "agree[d] to refrain from instituting, prosecuting, filing or processing, or assisting or cooperating with the instituting, prosecuting, filing or processing of any civil complaint, charge, or any litigation against Defendants in any way related to or arising out of the facts, claims or issues encompassed in this Agreement, or any other claims, charges, or causes of action against Defendants," though "[n]othing in this release shall waive any such rights as related to his vested benefits under profit sharing and pension plans of Siemens Corporation." (Id.).

In denying Kirby's appeal of its decision to terminate benefits based on the Agreement, MetLife concluded that in the Agreement Kirby "released Siemens and Siemens' insurers from any and all claims for benefits associated with his employment with Siemens," relying on the first unnumbered paragraph and the fourth numbered paragraph of the Agreement. (LTD A.R. 0576). According to MetLife, Kirby "released not only Siemens, but all claims or potential claims against its 'related entities,' its 'insurers,' and/or its

'administrators.'" (Id.).[7]  However, the Court does not agree with MetLife's assessment of the scope of the claims and parties released.

Defendants argue only conclusorily that the Siemens Corporation Group Plan and MetLife are "related entities," "insurers," or "administrators" of SICN.  They assert that the Siemens Corporation Group Plan is an affiliated and related entity of SICN and that "MetLife is both the insurer and administrator of the [Siemens Corporation Group] Plan." (Doc. 31 at 11).  Taking the issue of MetLife first, the Agreement defines "Defendants" as including the insurers and administrators of SICN—not of the Siemens Corporation Group Plan.  Defendants do not argue that MetLife is an insurer or administrator of SICN, and indeed the Court could not conclude that it is; MetLife insures the covered employees of SICN rather than SICN itself, (see LTD Plan, Ex. C to Compl., at ii), and it does not "administer" SICN.  And, while Defendants have a stronger argument that the Siemens Corporation Group Plan is an "affiliated or related entity" of SICN, even assuming that it is,[8] the Agreement does not release the Siemens Corporation Group Plan.

The first unnumbered paragraph of the Agreement, quoted above, does not release SICN's insurers or affiliates or related entities as urged by Defendants.  It defines the term "Defendants" as including SICN's "parents, subsidiaries, partnerships, partners, affiliated and related entities, insurers, and its past, present, or future directors, administrators, officers,

---

[7]It appears that in referring to "Siemens" in this document, MetLife was denoting Siemens Corporation.

[8]As is evident from some of the cases cited earlier in this Order, courts have reached differing conclusions regarding whether an employee benefit plan is necessarily a "related" or "affiliated" entity of an employer.

-12-

employees, agents, attorneys, representatives and assigns." (Agreement at 1). The Agreement then states in the second unnumbered paragraph that Kirby and "Defendants" want to resolve and settle the claims made in Kirby's civil lawsuit—in which only SICN was named as a defendant—as well as any other claims Kirby and "Defendants" may have against each other. (Id.). Elsewhere in the Agreement, the drafter—SICN's lawyer in the prior lawsuit—sometimes refers to "SICN" and sometimes to "Defendants"; these terms are not used interchangeably.

The first numbered paragraph, titled "Settlement Amount," states that SICN—not anyone else—will pay Kirby the settlement amount in three payments and that those payments are "a full and final settlement of all claims or disputes that now exist between Defendants and Kirby, including but not limited to the claims arising out of the" lawsuit. (Agreement ¶ 1). The second numbered paragraph obligates SICN to pay the mediators' fee, and in the third numbered paragraph Kirby expressly agrees that "Defendants" will make no other payments to him—acknowledging that the payments from SICN in the preceding paragraphs are the only payments he is owed as part of the settlement. (Id. ¶¶ 2-3).

While there may be some lack of clarity elsewhere in the Agreement, the fourth numbered paragraph, titled "General Release," is plain in what it says. In it, Kirby agrees "to release *SICN* from all claims of every kind . . . which Kirby has ever had or now may have against *SICN*." (Id. ¶ 4) (emphasis added). That paragraph then goes on to describe what claims are released, but all of these claims are limited by the preceding sentence's limitation of the claims as claims "against SICN." The second part of numbered paragraph 4 states that Kirby must pay attorney's fees to SICN if he tries to avoid the release or if SICN

-13-

successfully asserts the release. This "General Release" paragraph of the Agreement mentions only SICN and claims against SICN; it does not make reference to "Defendants" or any other entity being released. By its plain language, the Agreement only releases claims against SICN and not the claim that Kirby is now pursuing against the Siemens Corporation Group Plan and MetLife for LTD benefits.

In sum, even assuming arguendo that the Siemens Corporation Group Plan is an "affiliate" or "related entity" of SICN, the Agreement does not release affiliates and related entities—it only releases SICN and claims against SICN. SICN is not the LTD plan, its sponsor, or its administrator, and the Plan itself—not the employer—is the proper defendant in a claim for benefits. Furthermore, although the Agreement does mention ERISA, it mentions it only in discussing the scope of claims released against SICN—not claims against any other entity, and the fact that pension benefits are specifically excepted from the scope of the release does not compel a different result.[9] Paragraph four of the Agreement is clear and unambiguous as to what claims and what party are released. The confusing wording and mention of other parties elsewhere in the Agreement does not alter the plain terms of paragraph four, and in any event, those provisions must be construed against the drafter—SICN—and in favor of Kirby. Accordingly, Defendants erred in concluding that the Agreement bars Kirby's claim for LTD benefits and in terminating those benefits in April 2009.[10]

---

[9]To the extent that any of the cases cited by Defendants are inconsistent with this conclusion, I respectfully disagree with those decisions.

[10]Kirby requests that the Court order reinstatement of his LTD benefits as of the date

### B.  Portable Life Plan Benefits

In Count II of his Complaint, Kirby seeks to recover $189,000 in benefits under the Portable Life Plan.  He alleges that on February 10, 2009, he made a claim to MetLife for these benefits but as of the date of the Complaint MetLife had failed and refused to process his claim or to notify him of any determination regarding the claim.  This failure to process his claim is the basis of the breach-of-fiduciary-duty claim that Kirby brings in Count III.

Defendants argue in their summary judgment motion that Kirby has no coverage for the benefit he claims in Count II and that this claim is not properly before the Court because Kirby never made a claim for this benefit through the administrative process and therefore did not exhaust his administrative remedies.  Defendants assert that because no claim was made for this benefit, MetLife never administered or denied such a claim.

"'[P]laintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'"  Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000) (quoting Counts v. Am. Gen. Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997)).  "However, a district court has the sound discretion 'to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate' or where a claimant is denied 'meaningful access' to the administrative review scheme in place."  Id. (internal citation omitted) (quoting Counts, 111 F.3d at 108, and Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 891 F.2d 842, 846-47 (11th Cir. 1990)).

---

they were terminated.  Defendants, however, assert that they have learned of additional information bearing on whether Kirby is entitled to LTD benefits.  The Court will remand the LTD benefit claim for further administration consistent with this Order.

Kirby attests in an affidavit that on February 10, 2009, he sent a facsimile to MetLife requesting Life Plan benefits. (Kirby Aff., Ex. A to Doc. 30, ¶ 20). That facsimile was directed to Joe Barrett, the MetLife employee who had previously assisted Kirby with obtaining a waiver of premiums. (Id.; Facsimile dated Feb. 10, 2009, Ex. 11 to Kirby Aff.). In the faxed document, Kirby requested "assistance regarding an additional benefit that I qualify for under my Group Supplemental Life Insurance policy." (Ex. 11 to Kirby Aff.). Kirby stated in that document that his policy "includes an Accidental Death and Dismemberment Rider that includes a benefit payout amount for covered losses, such as the ones I am suffering from, specifically; paralysis in both legs and ankles." (Id.). Kirby asserted eligibility for a benefit of $189,000.00 and concluded by stating, "Should you have any questions regarding the above, or if I am required to complete additional applications and/or forms in order to process this claim, please contact me via email . . . or via telephone . . . ." (Id.).

The faxed document is the only document that Kirby claims to have submitted regarding his Life Plan benefits, and he "never heard back from MetLife" regarding it. (Kirby Aff. ¶ 20). Kirby states that he "attempted to contact Mr. Barrett (or other MetLife representative) repeatedly, [but his] calls were never returned." (Id.). Kirby "assumed" that when MetLife terminated his LTD benefits that Metlife "was refusing to process [his] portable life benefit claim because (according to MetLife) [Kirby] owed MetLife money." (Id.). Kirby characterizes the faxed document as his "attempt to make a claim for benefits, which was ignored by MetLife." (Kirby's Reply Mem., Doc. 38, at 3).

MetLife responds that it has no record of receiving this facsimile, (Marie Ruffing Decl., Attach. to Doc. 34, ¶ 11), and that Kirby did not otherwise pursue this claim. Defendants

argue that MetLife could not "act on something that it never received," and they note that Kirby has been represented by counsel since at least the time that he appealed the termination of his LTD benefits,[11] yet "no letter of inquiry was made by Kirby's counsel regarding the purportedly 'pending' [Life Benefit] claim." (Defs.' Reply Mem., Doc. 39, at 4).

In sum, the evidence before the Court shows that at most, Kirby sent a facsimile to MetLife, did not receive a response, and never made further written inquiry to MetLife about his claim for AD&D benefits. On these facts, the Court cannot conclude that Kirby was denied meaningful access to the administrative review scheme available to him or that he exhausted his administrative remedies with regard to his Portable Life Plan claim. The proper course under these circumstances is to remand Kirby's claim for Portable Life Plan Benefits for an out-of-time administrative appeal. Cf. Perrino; Dodd v. Metro. Life Ins. Co., No. 2:09-cv-745-FtM-36DNF, 2010 WL 5553678, at *4 (M.D. Fla. Dec. 7, 2010) (noting that "[i]f a claimant receives an inadequate benefits termination letter, the time limits for an administrative appeal may not be enforced against a claimant, and the usual remedy is not excusal from the exhaustion requirement[] but to remand to the plan administrator for an out-of-time administrative appeal").

C.  Other Claims and Counterclaims

In Count III of the Complaint, Kirby brings a claim of breach of fiduciary duty against

---

[11] Defendants identify September 2009 as the "at least as of" date of Kirby's representation by counsel. (See Doc. 39 at 4). The record actually indicates that Kirby was represented by that counsel in connection with pursuing an LTD administrative appeal at least as early as July 17, 2009. (See Letter from counsel to MetLife dated July 17, 2009, LTD A.R. 0548-0549).

MetLife based on its alleged failure to process his claim for paralysis benefits under the Life Plan.  In light of the Court's remand of Kirby's claim for paralysis benefits for failure to exhaust administrative remedies, Kirby's breach of fiduciary duty claim is moot.  Additionally, in light of the Court's ruling in Kirby's favor with regard to the termination of LTD benefits, MetLife's two counterclaims seeking return of LTD benefits prior to the termination date necessarily fail.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Kirby's Rule 56 Dispositive Motion for Summary Judgment (Doc. 30) is **GRANTED in part**, **DENIED in part**, and **DENIED as moot in part**.  The motion is **granted** insofar as it pertains to Kirby's claim regarding termination of his LTD benefits; is **denied** insofar as it pertains to Kirby's claim for paralysis benefits under the Portable Life Plan; and is **denied as moot** insofar as it pertains to MetLife's counterclaims and to Kirby's claim for STD benefits, which has been withdrawn.

2.  Defendants' Motion for Summary Judgment (Doc. 31) is **GRANTED in part and DENIED as in part**.  The motion is **granted** insofar as it seeks a determination that Kirby failed to exhaust his administrative remedies with regard to his claim for paralysis benefits under the Portable Life Plan and is otherwise **denied**.

3.  Defendants' decision to terminate Kirby's LTD benefits based on the Settlement Agreement entered into in December 2003 and January 2004 in settlement of Case No. 6:03-cv-986-Orl-28DAB is **REVERSED**.  As set forth in this Order, this Court concludes that

as a matter of law that document does not bar Kirby's claim for LTD benefits. The issue of whether Kirby is otherwise entitled to LTD benefits is not addressed in this Order, and Kirby's LTD claim will be remanded for further proceedings.

4. In light of Kirby's failure to exhaust his administrative remedies with regard to his claim for paralysis benefits under the Portable Life Plan, that claim is **REMANDED** to MetLife for a belated administrative appeal as to Kirby's entitlement to those benefits.

5. The Clerk is directed to enter a judgment providing that the decision to terminate Plaintiff's LTD benefits is **REVERSED** and that this case is **REMANDED** to MetLife for further proceedings consistent with this opinion regarding LTD benefits and for belated administrative processing with regard to Plaintiff's claim under the Portable Life Plan.

6. After entry of judgment as set forth above, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida this 28th day of February, 2013.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record